

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 22 2002

JAMES W. McCORMACK, CL
By: _____
DEP CI

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PRISCILLA HANDLEY, on Behalf of     \*
Herself and All Others Similarly Situated,     \*
    \*
        Plaintiff,     \*
    \*
vs.     \*     4:01cv00778 SWW
    \*
    \*
    \*
STEWART TITLE OF ARKANSAS, INC.,     \*
    \*
        Defendant.     \*

## MEMORANDUM AND ORDER

This is a class action brought pursuant to the Real Estate Settlement Practices Act

("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, on behalf of a proposed class of persons, each of whom

allegedly purchased residential real estate in a transaction involving a federally related mortgage

loan and in which the defendant, Stewart Title of Arkansas ("Stewart Title"), provided settlement

services.[1] The matter is before the Court on motion of Stewart Title pursuant to Fed.R.Civ.P.

12(b)(1) to dismiss the complaint for want of standing. Plaintiff responded in opposition to

Stewart Title's motion to dismiss, Stewart Title filed a reply to plaintiff's response and requested

a hearing, and plaintiff filed a sur reply to Stewart Title's reply. This Court held a hearing on

Stewart Title's motion to dismiss on February 14, 2002. For the reasons that follow, the Court

finds that Stewart Title's motion to dismiss should be and hereby is denied.

---

[1] Counsel for plaintiff have recently filed a number of other separate class actions in this district based on similar or identical allegations to this case: *Epps v. Stewart Information*, 4:01cv00764; *England v. Agentonline.com*, 4:01cv00795; *Williams v. Rector-Phillips-Morse, Inc.*, 4:01cv00796; *Tonasulo v. Real Estate Central*, 4:01cv00797; *Maune v. Rainey Realty, Inc.*, 4:01cv00827; and *Winkler v. Superior Financial Corp.*, 4:01cv00851.

I. Background

RESPA applies to "federally related" mortgage loans, *see* 24 C.F.R. § 3500.5(a), and was

enacted by Congress to protect home buyers from "unreasonably high settlement charges caused

by certain abusive practices." 12 U.S.C. § 2601(a). With its enactment of RESPA, Congress

sought, among other things, to "advance disclosure to home buyers and sellers of settlement

costs" and to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of

certain settlement services." 12 U.S.C. § 2601(b)(1) and (2).

Although nowhere mentioned in plaintiff's complaint, there is no dispute that on February

7, 2001, plaintiff purchased a home located at 21 Leisurewood Lane, Maumelle, Arkansas from a

Mr. and Mrs. Farrell for the sum of $128,500.00. Br. in Supp. of Mot. to Dis. at 2-3 (Ex. A).

Vanessa Eichler, a Rainey Realty ("Rainey") employee, served as plaintiff's selling agent, *id.*; *see*

*also* Aff. of Stewart Title President Michael Harris (attached to Stewart Title's motion to

dismiss), and Stewart Title issued a title insurance policy insuring plaintiff's title to her new

home. *Id.* at 3.

In her complaint, plaintiff alleges that Stewart Title, "[i]n direct violation of RESPA," has

"concocted a scheme to compensate realty companies and brokers in order to generate referrals

while simultaneously extracting excessive fees for the service it provides." Compl. at ¶ 3. She

states that Stewart Title works with real estate agencies and brokers through a company called

TitleMax.com ("TitleMax"), and that the purpose of this company is to "emasculate RESA by

enabling Stewart Title to funnel money to realty companies and brokers in exchange for the

realtors referring home buyers to Stewart Title for their settlement services." *Id.* at ¶ 4. Plaintiff

states that TitleMax affiliates with real estate agents in order for the agents to purportedly offer

2

title insurance, and that TitleMax advertises to real estate agents and others by stating on its website that "by associating with the TitleMax program you can capitalize on your existing business model simply by adding another revenue stream from the very business you already generate." *Id.* The added "revenue stream" for the real estate agent, states plaintiff, comes in the form of payments from TitleMax vis a vis Stewart Title in exchange for referring home owners to Stewart Title. *Id.* Plaintiff states that "[t]he purpose of this arrangement is an attempt to bypass RESPA's prohibitions by turning a referring agent into a provider of title services." *Id.*

Plaintiff states that Stewart Title performs all settlement services for the real estate agency, but does so under the name TitleMax. *Id.* at ¶ 5. She states that the real estate agency claims it prepares the title commitment, while in fact it performs few if any of the settlement services required and then "pockets" up to 60% of the settlement service fees paid by the home buyer. *Id.* Plaintiff states that in order to make this transaction profitable for Stewart Title, it charges home buyers a greater than fair market fee for title insurance and other settlement services, and that Stewart Title does not disclose the financial arrangements it has with real estate brokers to home buyers, in violation of RESPA. *Id.*

Plaintiff additionally states that Stewart Title, as a routine course of business, leases office space in buildings owned by realty companies and that rather than pay fair market value as rent, Stewart Title pays exorbitant sums to the realty companies and also routinely pays the salary of one or more staff members for real estate agencies or brokers. *Id.* at ¶ 6. In exchange, states plaintiff, the realty companies refer home buyers to Stewart Title for title insurance. *Id.* Plaintiff states that Stewart Title charges an excessive fee for title insurance and does not disclose the financial relationship it has with the realty companies to home buyers, and she claims that the

3

excessive rent payments are "defacto kickbacks" that Stewart Title pays to the realty companies in exchange for referrals. *Id.*

Plaintiff states that Stewart Title created and maintained these referral arrangements to the financial benefit of themselves in a manner prohibited by RESPA: (a) without disclosing to class members as required by RESPA the relationship between Stewart Title and the referring party; (b) without disclosing to class members as required by RESPA the charges or range of charges for Stewart Title's services, which in fact are substantially above market prices; (c) without disclosing to class members as required by RESPA their freedom to shop around for better title service rates; and (d) by means of affirmative misrepresentations and misleading statements to class members that the State of Arkansas and other Insurance Commissioners had approved Stewart Title's rates, that those were "prevailing industry standard rates," and that the buyer's real estate agent could restrict class members' choice of title insurance companies. *Id.* at ¶ 7.

Plaintiff alleges that the aforementioned acts of Stewart Title violate § 8(a) and (b) of RESPA, 12 U.S.C. § 2607(a) and (b). Compl. at ¶ 42. Those provisions provide as follows:

Section 2607(a) prohibits referral fees and kickbacks in connection with settlement services, stating that

> [n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Section 2607(b), in turn, provides that

> [n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service

4

in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Plaintiff also alleges that the aforementioned acts of Stewart Title violate certain regulations promulgated under RESPA by the Department of Housing and Urban Development ("HUD"), namely 24 C.F.R. § 3500.14(b) and (c), and 24 C.F.R. § 3500.15(b)(1).  Compl. at ¶ 42.  Those regulations provide as follows:

24 C.F.R. § 3500.14(a) provides that any violation of this section is a violation of section 8 of RESPA.  In this respect, 24 C.F.R. § 3500.14(b) repeats the prohibition of § 2607(a) of RESPA and adds that "[a]ny referral of a settlement service is not a compensable service except as set forth in § 3500.14(g)(1)," and "[a] company may not pay any other company or the employees of any other company for the referral of settlement service business."

Likewise, 24 C.F.R. § 3500.14(c) repeats the prohibition of § 2607(b) of RESPA and adds that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."  The section further adds that "[t]he source of the payment does not determine whether or not a service is compensable.  Nor may the prohibitions of this Part be avoided by creating an arrangement wherein the purchaser of services splits the fee."

Finally, 24 C.F.R. § 3500.15(b) provides that an affiliated business arrangement[2] is not a violation of § 2607 and of 24 C.F.R. § 3500.14 if certain conditions are satisfied, including that the person making each referral has provided to each person whose business is referred a written

---

[2] The term "affiliated business arrangement" means an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.  12 U.S.C. § 2602(7).

disclosure, in the format of the Affiliated Business Arrangement Disclosure Statement, of the nature of the relationship (explaining the ownership and financial interest) between the provider of settlement services (or business incident thereto) and the person making the referral and of an estimated charge or range of charges generally made by such provider (which describes the charge using the same terminology, as far as practical, as section L of the HUD-1 settlement statement).  24 C.F.R. § 3500.15(b)(1).

## II. Discussion

Stewart Title, as previously noted, moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) on grounds that plaintiff lacks standing.  Stewart Title argues that plaintiff has not suffered any actual injury caused by Stewart Title  for which she would have a likelihood of redressability and, therefore, this Court lacks subject matter jurisdiction.

## A. Standing

"The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  In this respect, a party claiming standing must demonstrate not only that a case falls within the parameters of Article III jurisdiction, but also that prudential considerations do not further limit the exercise of a court's power to hear a case. *See, e.g., In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002); *Ass'n of Comm. Organizations for Reform v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999); *Starr v. Mandanici*, 152 F.3d 741, 748-50 (8th Cir. 1998).

6

1. Article III standing

"Article III of the United States Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001) (quoting *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995), *cert. denied*, 516 U.S. 1173 (1996)). "The Standing requirement is, at its core, a constitutionally mandated prerequisite for federal jurisdiction, and an 'essential and unchanging part of the case-or-controversy requirement of Article III.'" *Johnson v. State of Missouri*, 142 F.3d 1087, 1088 (8th Cir. 1998) (quoting *Raines v. Byrd*, 117 S.Ct. 2312, 2317 (1997)). *See also Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (noting that the plaintiff's standing to sue is the threshold question in every federal case, determining the power of the court to entertain the suit); *Friedmann v. Sheldon Comm. Sch. Dist.*, 995 F.2d 802, 804 (8th Cir. 1993) (noting that "[w]ithout standing the federal courts are without subject matter jurisdiction to entertain [a plaintiff's] action"). To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Steger*, 228 F.3d at 892 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). *See also Johnson*, 142 F.3d at 1088; *Potthoff*, 245 F.3d at 715. An 'injury-in-fact' is an actual or imminent invasion of a legally protected interest, which is both concrete and particularized to the party, and not conjectural or hypothetical. *Johnson*, 142 F.3d at 1088; *Steger*, 228 F.3d at 892. The plaintiff must show that he or she "'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and [that] the injury or threat of injury [is] both real and immediate ....'" *Steger*, 228 F.3d at 892 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotations omitted)).

7

2. Prudential Standing

"In addition to the immutable requirements of Article III, 'the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.'" *Bennett*, 520 U.S. at 162 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982)). "Like their constitutional counterparts, these 'judicially self-imposed limits on the exercise of federal jurisdiction' are 'founded in concern about the proper – and properly limited – role of the courts in a democratic society,' but unlike their constitutional counterparts, they can be modified or abrogated by Congress.'" *Id.* (internal citations and quotations omitted). As applicable to this case, "[p]rudential standing is ascertained according to the zone-of-interests test, that is 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Central South Dakota Co-Op Grazing v. Secretary*, 266 F.3d 889, 895 (8th Cir. 2001) (quoting *Bennett*, 520 U.S. at 175). "[T]he breadth of the zone of interests varies according to the provisions of law at issue," *Bennett*, 520 U.S. at 163, which, in this case, is RESPA.

B. Plaintiff's Standing

Plaintiff initially argued in her response to Stewart Title's motion that she had standing to sue based on certain evidence of record, namely a RESPA disclosure statement (Ex. 1) that she claimed controverted Stewart Title's assertion that Rainey and Stewart Title did not have a business relationship, and that "[t]his fact alone is sufficient for plaintiff's complaint to sustain defendant's 'factual' challenge" to standing. Pl.'s Mem. of Law in Opp. to Def.'s Mot. to

8

Dismiss at 4, 9 (Ex. 1).[3]  Plaintiff further argued that even if no Affiliated Business Relationship as defined by RESPA exists between Rainey and Stewart Title, Rainey has disclosed, apparently through the same RESPA disclosure statement, that it receives financial and other benefits from Stewart Title in exchange for referring settlement business, in violation of RESPA.  *Id.* at 4-5.  She stated that "[a]s shown by plaintiff, Stewart [Title] and Rainey do indeed have a relationship whereby Rainey refers business to Stewart [Title]," and that she "has shown that Stewart [Title] provides financial and other benefits to Rainey in exchange for Rainey referring settlement business to Stewart [Title]."  *Id.* at 10.

In her sur reply, plaintiff abandons her reliance on this RESPA disclosure as conferring standing, and argues that she need not come forward with evidence supporting her allegations at this time but, rather, that she need only *"plead"* that as a home buyer she was entitled to legal rights afforded by RESPA, that Stewart Title paid a kickback in exchange for a referral, and that she suffered damages.  *Id.* Pl.'s Sur Reply to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 3, 5 (emphasis in original).  She argues that "[t]his, *in and of itself*, satisfies the 'actual or threatened injury required by Art. III'" and that Stewart Title's "argument requiring anything additional of [plaintiff] to establish standing is superfluous." *Id.* at 3 (emphasis in original).[4]

It is true that when standing is challenged on the basis of the pleadings, courts

---

[3] Plaintiff's complaint is framed in general and non-specific of terms and does not mention Rainey Realty by name or its alleged dealings with plaintiff, but refers to real estate agencies and brokers generically.

[4] Plaintiff's abandonment of her reliance on the RESPA disclosure statement as conferring standing is understandable. As noted by Stewart Title, the RESPA disclosure statement is dated November 14, 2001, some eight months *after* plaintiff purchased her home, and, moreover, is not even signed by plaintiff, but by Sharon Sue Maune, the plaintiff in another class action lawsuit counsel for plaintiff have filed. *See* n.1., *supra.*

9

customarily "'accept as true all material allegations of the complaint, and * * * construe the complaint in favor of the complaining party.'" *Pulido v. Bennett*, 848 F.2d 880, 884 (8th Cir. 1988) (quoting *Warth*, 422 U.S. at 501). "Complaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be alleged generally." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 919 (7th Cir. 2002) (citing *Lujan*, 504 U.S. at 561). *See also Potthoff*, 245 F.3d at 715 (noting that in ruling on a motion to dismiss for want of standing, this Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party") (quoting *Warth*, 422 U.S. at 501)); *Steger*, 228 F.3d at 892 (same). In *Lujan*, the Supreme Court elaborated on this point, explaining that the party invoking federal jurisdiction bears the burden of establishing the required elements, and that "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. Accordingly, while a plaintiff in successive stages of the litigation may not be able to rest on mere allegations, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id. See also Alliant Energy Corp.*, 277 F.3d at 919 (noting that a complaint need only state the nature of the claim; "details" can wait for later stages of the litigation "such as an evidentiary hearing under Fed.R.Civ.P. 12(b)(1) or summary judgment under Rule 56").

In moving for dismissal under Rule 12(b)(1), Stewart Title argues that plaintiff has no Article III standing to assert any violations of RESPA as, contrary to the assertions of her complaint, she was not referred to Stewart Title through any affiliated business arrangement

10

("AfBA"). Specifically, Stewart Title asserts that at the time of plaintiff's purchase of her home on February 7, 2001, and the subsequent purchase of a title insurance policy from Stewart Title, there was no affiliated business arrangement between Stewart Title and Rainey or Eichler. Br. in Supp. of Mot. to Dis. at 7 (Harris Aff.). Thus, argues, Stewart Title, there could have been no inadequacies in Stewart Title's AfBA disclosures because Stewart Title had no obligation under RESPA to disclose relationships that do not exist. *Id.*[5]

Stewart Title's argument, if upheld, establishes no more than a defense on the merits of plaintiff's RESPA claim and does not warrant dismissal of plaintiff's complaint at this time. Rather, "'[d]ismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1142 (8th Cir. 1998) (quoting *Steel Co. v. Citizens for a Better Env't*, 118 S.Ct. 1003, 1010 (1998)), *cert. denied*, 526 U.S. 1098 (1999). *See also Trimble v. ASARC, Inc.*, 232 F.3d 946, 953 (8th Cir. 2000) (noting that a motion to dismiss a federal claim, if predicated on failure to establish an essential element of the cause of action, should generally be analyzed under Rule 12(b)(6) rather than Rule 12(b)(1), unless it can be shown that the challenged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous") (quoting *Bell v. Hood*, 327 U.S. 678, 683 (1946)). "'[O]nly the most extreme cases

---

[5] The parties do not seriously dispute, and this Court in any case finds, that plaintiff has satisfied the zone-of-interests test for purposes of prudential standing, *i.e.*, that the interest sought to be protected by plaintiff is arguably within the zone of interests to be protected or regulated by RESPA. *See Central South Dakota Co-Op Grazing*, 266 F.3d at 895 (quoting *Bennett*, 520 U.S. at 175).

will fail the jurisdictional test of substantiality," *id.* (quoting *LaSalle Nat'l Trust v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir. 1996)), and "[o]nly in such rare instances is dismissal for lack of subject matter jurisdiction appropriate." *Id.*

In *Trimble*, the Eighth Circuit adopted the reasoning of the Seventh Circuit in *LaSalle Nat'l Trust* in explaining why it is important to distinguish dismissals under Rule 12(b)(1) from dismissals under Rule 12(b)(6).

> [I]t is obviously possible that a plaintiff may successfully invoke federal jurisdiction, for purposes of 28 U.S.C. § 1331, and yet may lose on some other ground, such as a failure to state a claim on which relief can be granted or failure to prove the merits after a full trial.  A plaintiff's claim may appear to be sufficient on its face, but a defendant may have a compelling affirmative defense.  In some cases, the distinction between a claim that is wholly frivolous for jurisdictional purposes and a claim that is doomed on the merits may seem medieval in its fineness, and may be of little practical importance.  Nonetheless, the distinction is one that the Supreme Court has always recognized, and it rests on both sound policy grounds as well as practical considerations.  From a policy standpoint, it underscores the importance of giving a full hearing to those who are attempting to raise claims in federal court, even if those claims are eventually unsuccessful.  From the more pragmatic side, the way in which the facts are handled under Fed.R.Civ.P. 12(b)(1) differs significantly from the correct approach for purposes of Rule 12(b)(6) and the Rule 12 procedures differ again from those used for Rule 56.

*Id.* at 954 (quoting *LaSalle Nat'l Trust*, 76 F.3d at 143).  The Eighth Circuit agreed with the Seventh Circuit that "making the distinction between a claim that is 'wholly frivolous for jurisdictional purposes' and one that is 'doomed on the merits' is neither merely academic nor unnecessary," and that "[t]he distinction is based on longstanding policy and practical considerations which are not trivial and cannot be overlooked." *Id.*  Accordingly, as Stewart title has moved for dismissal under Rule 12(b)(1), the only question for this Court is whether this is one of those rare instances in which the claim "clearly appears to be immaterial and made solely

for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 953 (quoting *Bell*, 327 at 683).  The Court concludes it is not.

Certainly, plaintiff's acknowledgments at the hearing would not seem to portray an individual with the weightiest of cases.  Indeed, plaintiff essentially acknowledged that this case began as what could be considered a classic "fishing expedition."  She stated that she came to be a plaintiff in this case only after responding to a newspaper advertisement from her attorneys seeking individuals who might have a RESPA claim and that she had no complaints about the manner in which her real estate transaction was conducted prior to responding to the newspaper advertisement.  Plaintiff went on to acknowledge that she is going by what her attorneys have told her and that she did not particularly know the details of her complaint or the theory under which her complaint was based, and that she does not know if she has been harmed.

Despite what might appear to be a somewhat weak underpinning to plaintiff's case, the matter was presented to this Court as a question of subject-matter jurisdiction under Rule 12(b)(1) and the Court is unable to conclude on this record that plaintiff's claim is "'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Godfrey*, 161 F.3d at 1142 (quoting *Citizens for a Better Env't*, 118 S.Ct. at 1010).  By its very nature, the evidence plaintiff would need to prove her claim that Stewart Title paid a kickback in exchange for a referral is difficult to uncover without at least some discovery.[6]  In this respect, the Court has not yet

---

[6] By way of example, there was evidence presented at the hearing that Stewart Title issued to plaintiff at the closing of her home a standard owner's insurance policy when, in fact, she actually purchased a Homeowner's Title Policy.  Plaintiff received notice that this discrepancy was corrected on February 13th, the day before the hearing.  Whether this was an innocent mistake or, as plaintiff intimates, the funds for the purchase of the belatedly issued Homeowner's Title Policy were utilized in ways prohibited by RESPA is an issue yet to be explored.

established a schedule for conducting discovery and no motion for summary judgment under Fed.R.Civ.P. 56 has been filed.  The Court simply cannot say that plaintiff's claim fails the jurisdictional test of substantiality and so dismissal under Rule 12(b)(1) is improper.  *Cf. Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868 (8th Cir. 1999) (seed company did not lack standing to sue over allegation that defendant broke development and license agreements involving genetically engineered, insect-resistant corn, even though defendant claimed that merger of seed company's parent company and another company violated assignment and transfer provisions of agreements, thereby terminating seed company's rights; whether an assignment or transfer in violation of agreement took place has nothing to do with subject-matter jurisdiction, but rather with an arguable defense on the merits); *Godfrey,* 161 F.3d at 1142 (effect on competition and the competitive relationship between allegedly favored and disfavored buyers in Robinson-Patman case go to elements of a prima facie case and need not be proven to establish subject matter jurisdiction).

### III. Conclusion

For the foregoing reasons, the Court finds that Stewart Title's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for want of standing should be and hereby is denied.

IT IS SO ORDERED this 22nd day of February 2002.

*Susan Webber Wright*

CHIEF JUDGE
UNITED STATES DISTRICT COURT

14

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP

F I L E   C O P Y

vjt

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325


February 25, 2002



\* \* MAILING CERTIFICATE OF CLERK \* \*


Re:  4:01-cv-00778.



True and correct copies of the attached were mailed by the clerk to the following:

        Steven Eugene Cauley, Esq.
        Cauley Geller Bowman & Coates, LLP
        Post Office Box 25438
        Little Rock, AR  72221-5438

        Curtis L. Bowman, Esq.
        Cauley Geller Bowman & Coates, LLP
        Post Office Box 25438
        Little Rock, AR  72221-5438

        Randall Keith Pulliam, Esq.
        Cauley Geller Bowman & Coates, LLP
        Post Office Box 25438
        Little Rock, AR  72221-5438

        Marie Bernarde Miller, Esq.
        Gill Elrod Ragon Owen & Sherman, P.A.
        TCBY Tower
        425 West Capitol Avenue
        Suite 3801
        Little Rock, AR  72201-2413

        Richard L. Lawrence, Esq.
        Gill Elrod Ragon Owen & Sherman, P.A.
        TCBY Tower
        425 West Capitol Avenue
        Suite 3801
        Little Rock, AR  72201-2413

        cc: press

                                James W. McCormack, Clerk

                                    V. Turner

    2/25/02